**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1214-17T4

DREW WARES and MEDIN
TAFA, on behalf of themselves
and others similarly situated,

     Plaintiffs-Appellants,

v.

GUARANTEED MOTOR
TOWING SERVICE, INC.,
and MARK DIGIOVANNI,

     Defendants-Respondents.

_____

Argued November 29, 2018 – Decided April 11, 2019

Before Judges Whipple and DeAlmeida.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-2088-16.

Andrew R. Wolf argued the cause for appellants (The Wolf Law Firm, LLC, and The Law Office of Christopher J. McGinn, attorneys; Matthew S. Oorbeek, Andrew R. Wolf, Bharati Sharma Patel and Christopher J. McGinn, on the briefs).

Eric S. Schlesinger argued the cause for respondents (Golden, Rothschild, Spagnola, Lundell, Boylan & Garubo, PC, attorneys; Eric S. Schlesinger and Hristo Zevlikaris, of counsel and on the brief).

PER CURIAM

Plaintiffs Drew Wares and Medin Tafa appeal from the April 21, 2017 and November 9, 2017 summary judgment orders dismissing their claims under the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20; Predatory Towing Protection Act (Towing Act), N.J.S.A. 56:13-7 to -23; and the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18. Plaintiffs, representing a putative class, complained defendants Guaranteed Motor Towing Service (Guaranteed) and Mark DiGiovanni, Guaranteed's owner and president, violated the Towing Act when Guaranteed towed their cars from a residential apartment complex. Plaintiffs also alleged defendants violated the CFA and TCCWNA when plaintiffs attempted to retrieve their cars. For the reasons that follow, we reverse the trial court's summary judgment dismissal of plaintiffs' claims and remand for further proceedings.

Both Wares and Tafa lived in an apartment complex at 32 Union Street (32 Union) in New Brunswick. Both had assigned parking spots in 32 Union's

underground garage and received parking placards. Both received a parking policy document stating the following:

> We are allowing Guaranteed Motors (732)247-7491 the permission to enter our private property and remove any vehicles in violations as follows:
> - Permit parking tag matches the numbered spot
> - Vehicles with no parking passes
> - Parking permits must be displayed on rearview mirror or dashboard ONLY
>
> If the rules listed above are not followed your car WILL be towed.
> Guaranteed Motor is located at 636 Hamilton Street, Somerset, New Jersey. To contact Guaranteed Motor Towing Service, call 732 247-7491.
> Towing services are available 24/7, 7 days a week.
> The office is open during the following times: Monday – Friday: 8:00 a.m. – 3:30 p.m. Saturday: 8:00 a.m. – 10:00 a.m. Sunday: Closed
> ALL CARS WILL BE TOWED AT OWNERS EXPENSE
> 1. IF VEHICLE PARKED IN FIRE ZONE
> 2. TAGS NOT DISPLAYED ON DASHBOARD OR HANGING CLEARLY FROM THE REAR MIRROR FACING OUT
> 3. IF VEHICLE TAG DOES NOT MATCH PARKING SPOT #

32 Union posted a sign in the parking garage stating, "PARKING BY PERMIT ONLY violators will be towed." The sign did not include such information as the name, address, operating hours and phone number of the towing company.

A-1214-17T4

On August 17, 2015, Wares parked his brother's car in the garage overnight but did not hang the parking placard on the car's rear view mirror. The next morning, he learned Guaranteed towed the car. Guaranteed told Wares he could pay eighty-five dollars to retrieve his car, but when Wares asked for a receipt, Guaranteed told him he could not pay with a credit card. According to Wares, Guaranteed refused to give him an invoice unless and until he paid eighty-five dollars in cash.

Guaranteed towed Tafa's car on July 30, 2015, and January 22, 2016, respectively. Tafa did not display the placard on both occasions. In July 2015, Tafa went with his girlfriend to retrieve the car. Guaranteed told him he had to pay $127.80 (comprised of an eighty-five dollar tow charge, a forty-dollar storage fee, and two dollars and eighty cents in taxes) and provided an invoice. However, Guaranteed issued the invoice to Tafa's girlfriend because Tafa's insurance information was inside the car and Guaranteed would not let him retrieve it. In the second instance, Tafa was required to pay eighty-five dollars, and the invoice was issued to his girlfriend.

On April 7, 2016, Wares and Tafa filed a class action complaint alleging Guaranteed violated: (1) the CFA by towing the putative class's cars illegally; (2) the Towing Act because Guaranteed charged excessive towing fees; (3) the

TCCWNA by charging excessive fees; (4) the TCCWNA by failing to provide a proper invoice; and (5) the CFA for illegally towing Tafa's car. Neither Wares nor Tafa pursued an administrative remedy with any governmental agency before filing a complaint.

On April 21, 2017, defendants moved for summary judgment and the judge dismissed the CFA counts. The judge found plaintiffs could not establish Guaranteed violated the Towing Act, a necessary predicate to show a CFA violation, because both received the parking policy, which permitted Guaranteed to conduct non-consensual towing, and neither displayed their parking placards at the time Guaranteed towed their cars. The trial judge acknowledged the signage displayed in the parking garage was deficient under the Towing Act but found "the intent and spirit of the legislature in forming and passing that legislation has been satisfied because here . . . [w]e are dealing . . . with notice that complies with the statute[.]"

On November 9, 2017, the judge dismissed plaintiffs' remaining claims. She found plaintiffs did not exhaust their administrative remedies pursuant to the Towing Act, because they neither engaged in good faith negotiations with Guaranteed nor complained to a governmental entity before filing a complaint.

A-1214-17T4

With no remaining claims, the judge dismissed plaintiffs' motion to compel discovery and to file a second-amended complaint. This appeal followed.

"[W]e review the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The evidence must be viewed "in the light most favorable to the non-moving party[.]" Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012). "Rule 4:46-2(c)'s 'genuine issue [of] material fact' standard mandates that the opposing party do more than 'point[] to any fact in dispute' in order to defeat summary judgment." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (alteration in original) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995)).

Enacted in 2008, the Towing Act set minimum standards for tow truck operators and prevents predatory towing practices, such as "charging unwarranted or excessive fees . . . or overcharging persons for towing services

provided under circumstances where the consumer has no meaningful opportunity to withhold consent[.]" N.J.S.A. 56:13-8(b) (2017). The Towing Act, in part, "regulates the removal of vehicles that are on private property without proper authorization. [The Towing Act] is intended to stop the practice of predatory towing, where a vehicle is removed without the owner's notice or consent and the owner is charged an exorbitant fee for the vehicle's return." S. Transp. Comm. Statement to S. 2759 (June 14, 2007).

A towing company may not tow an improperly parked car on private property unless the towing company has a contract with the property owner and signage, which must include towing charges, is conspicuously posted. N.J.S.A. 56:13-13(a). However, if the private property is a residential community with assigned parking spaces, the towing company, whom the landlord has a contract, may tow a vehicle provided:

> (1) the assigned spaces are clearly marked as such;
>
> (2) there is specific documented approval by the property owner authorizing the removal of the particular vehicle; and
>
> (3) a sign, which can easily be seen by the public, is posted in a conspicuous place at all vehicular entrances to the residential community property, stating that unauthorized parking in an assigned space is prohibited and unauthorized motor vehicles will be towed at the owner's expense, and providing information or a

7

telephone number enabling the vehicle owner or operator to immediately obtain information as to the location of the towed vehicle.

[N.J.S.A. 56:13-13(e).]

"The Towing Act requires the Director of the Division of Consumer Affairs (Director) to establish, by regulation, a schedule of the services for which a towing company can charge fees in connection with the non-consensual towing of a motor vehicle." Pisack v. B & C Towing, Inc., 455 N.J. Super. 225, 237 (App. Div.), leave to appeal granted, 236 N.J. 24 (2018). Towing companies must charge "reasonable and not excessive" fees. N.J.S.A. 56:13-14(b). A fee is presumptively unreasonable if it is "[m]ore than [twenty-five] percent higher than the fee charged by the towing company . . . for the same services when" the owner of the car consents to the tow or "[m]ore than [fifty] percent higher than the fee charged for such other non-consensual towing[.]" N.J.A.C. 13:45A-31.5(a).

The Towing Act provides consumers with two remedial paths. A consumer may sue under the CFA or "the [Director of the Division of Consumer Affairs] may order a towing company that has billed a person for any nonconsensual towing . . . an amount determined by the [Director] to be unreasonable to reimburse the person for the excess cost with interest." N.J.S.A.

56:13-21(b).  The Director, in promulgating regulations under the Towing Act, encouraged parties to "use good faith efforts to resolve [their] dispute" before petitioning the Director.  N.J.A.C. 13:45A-31.4(f).

Any violation of the Towing Act "is an unlawful practice and a violation of [the CFA.]"  N.J.S.A. 56:13-21(a).  To state a private cause of action under the CFA, a consumer must prove "'1) unlawful conduct [or practice] by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.'"  Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 121 (2014) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009)).  A Towing Act violation satisfies the "unlawful conduct" element of a CFA claim.  Cf. Dugan v. TGI Fridays, Inc., 231 N.J. 24, 51 (2017) ("An 'unlawful practice' contravening the CFA may arise from (1) an affirmative act; (2) a knowing omission; or (3) a violation of an administrative regulation.").

To establish a TCCWNA claim, a plaintiff must prove he or she is an "aggrieved consumer" and the defendant violated a "clearly established legal right" or "responsibility."  N.J.S.A. 56:12-15, -17; Dugan, 231 N.J. at 69.  "[T]he term 'aggrieved consumer' denotes a consumer who has suffered some form of harm as a result of the defendant's conduct."  Spade v. Select Comfort Corp.,

232 N.J. 504, 522 (2018). Because "vehicle owners are consumers under the Towing Act, they also should be considered consumers under the TCCWNA." Pisack, 455 N.J. Super. at 248. "The bills issued by the towing companies are consumer contracts and notices within the meaning of the TCCWNA." Id. at 249. "Accordingly, those bills and invoices act as the 'writings required to complete the consumer transaction.'" Ibid. (quoting N.J.S.A. 56:12-1). Any "inclusion of prohibited charges in the bill 'deceives a consumer into thinking they are enforceable.'" Ibid. (quoting Dugan, 231 N.J. at 68). Therefore, prohibited charges contained in a towing bill violate a "clearly established legal right" or "responsibility." Ibid.

In her statement of reasons in support of the November 9, 2017 order, the judge agreed with Guaranteed that plaintiffs were required to exhaust their administrative remedies pursuant to N.J.S.A. 56:13-21(b), before suing under the Towing Act. The judge dismissed plaintiffs' Towing Act and TCCWNA claims because neither plaintiff pursued an administrative remedy or petitioned the Director before filing a complaint.

Consistent with our recent decision in Pisack, we disagree. The Towing Act permits administrative remedies but does not impose exhausting administrative as a condition precedent before suing under the Towing Act.

Pisack, 455 N.J. Super. at 242. The Towing Act omits the type of specific language New Jersey courts have required before reading an exhaustion of administrative remedies requirement into a statute. Cf. Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 587-88 (2013) (holding the legislature deliberately meant to create two types of remedies under a statute by using "shall" for mandatory avenues of relief and "may" for permissive ones). Although the administrative regulations promulgated pursuant to the Towing Act state parties "shall use good faith efforts to resolve the dispute," the term "shall" only refers to good faith efforts, not further administrative dispute resolution avenues. Pisack, 455 N.J. Super. at 243. Accordingly, we reverse the November 9, 2017 order dismissing counts two, three, and four of plaintiffs' complaint and remand for further proceedings.

The November 9, 2017 order also disposed of plaintiffs' motions to compel more specific discovery responses and to file a second amended complaint. The judge did not reach the merits of those motions after dismissing plaintiffs' claims for failure to exhaust administrative remedies. On remand, plaintiffs' motions shall be considered anew.

In addition, the April 21, 2017 order dismissed counts one and five in error. The premise of the judge's decision therein was Guaranteed did not

violate the "spirit" of the Towing Act, because plaintiffs received notice of 32 Union's parking policy, notwithstanding the parking lot's deficient signage. Therefore, the judge found plaintiffs could not prove a CFA violation based on the Towing Act.

"When called on to interpret a statute, 'our overriding goal must be to determine the Legislature's intent.'" Cast Art Indus., LLC v. KPMG LLP, 209 N.J. 208, 221 (2012) (quoting State v. Gonzalez, 142 N.J. 618, 627 (1995)). "It is not the function of this [c]ourt to 'rewrite a plainly-written enactment of the Legislature []or presume that the Legislature intended something other than that expressed by way of the plain language.'" DiProspero v. Penn, 183 N.J. 477, 492 (2005) (alteration in original) (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)). "Our duty is to construe and apply the statute as enacted." In re Closing of Jamesburg High Sch., 83 N.J. 540, 548 (1980).

N.J.S.A. 56:13-13(a) generally prohibits the unconsented towing of vehicles from private property unless certain conditions are met. N.J.S.A. 56:13-13(e) imposes specific conditions before a towing company may legally tow from a residential community. A car may not be towed from a residential community unless: (1) parking spaces are specifically assigned and clearly marked, (2) "there is specific documented approval by the property owner

authorizing the removal of the particular vehicle," and (3) a sign, stating unauthorized parking is prohibited, violators will be towed at the owner's expense, and containing the towing company's phone number, is conspicuously posted. N.J.S.A. 56:13-13(e). The Legislature's intentional use of "and" means all three conditions must be met before a vehicle may be towed from a residential community. 32 Union's signage was deficient because it did not include Guaranteed's phone number, among other missing information. This deficiency was not minor. The owners of towed vehicles need to know where and how to retrieve their vehicles. It was therefore error to excuse that deficiency and grant summary judgment.

Moreover, the judge did not determine whether 32 Union management reported or documented plaintiffs' cars as improperly parked. The record contained no "specific documented approval by the property owner authorizing the removal of" plaintiffs' vehicles. Thus, affording plaintiffs all favorable inferences, they raised a genuine dispute of material fact as to whether Guaranteed towed their cars in violation of the Towing Act.

Excusing technical compliance in lieu of conformity with the "spirit" of the statute would render the Towing Act's protection against unauthorized towing "mere surplusage." Cf. In re Attorney Gen.'s "Directive on Exit Polling:

13

Media & Non-Partisan Pub. Interest Grps.", 200 N.J. 283, 298 (2009). The Legislature enacted specific conditions, each of which must be met, before a car can be towed from private property. Cf. DiProspero, 183 N.J. at 493 ("Ordinarily, we are enjoined from presuming that the Legislature intended a result different from the wording of the statute . . . ."). Therefore, a towing company violates the Towing Act when it tows a car from private property absent compliance with all applicable statutory conditions.

We need not address other questions raised but not reached by the trial judge, such as whether plaintiffs suffered an ascertainable loss, whether Guaranteed violated a "clearly established legal right," or whether the necessary requirements for class certification have been met. Those questions are to be addressed by the trial judge on remand consistent with this opinion.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1214-17T4